IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.  ) | CASE NO. 2:09-cr-0031-MEF-02 |
| ) | |
| KELVIN SUMMERS ) | |
| ) | |

# MEMORANDUM OPINION AND ORDER

On December 9, 2009, following a three-day jury trial, Kelvin Summers ("Summers") was convicted of (1) conspiracy to distribute or possess with intent to distribute crack cocaine in violation of 21 U.S.C. § 846 and (2) distribution of crack cocaine in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. Summers now moves for a judgment of acquittal or, in the alternative, a new trial. (*See* Doc. # 153, filed Jan. 11, 2010.) For the following reasons, the Court will deny both motions.

## I.  RELEVANT FACTS

On June 4, 2008, Montgomery, Alabama police officers, working with a confidential informant named Roosevelt Palmer ("Palmer"), attempted to make a "controlled buy" of crack cocaine from Summers. In an unrecorded phone call with Palmer, Summers agreed to sell two-and-one-quarter ounces of crack cocaine to Palmer for $2,250. Summers told Palmer to meet him at a local gas station to make the buy. Before sending Palmer to the gas station, the officers searched him to make sure he did

not have any drugs, money, or weapons. Finding none, they gave him $2,250 for the buy. They also hid audio- and video-recording devices on him.

Palmer drove to the gas station. Summers was not there when Palmer arrived. Palmer called Summers to ask where he was. Summers responded that he could not meet Palmer at the gas station after all and that he would get someone else to show up. A few minutes later, Summers called Palmer to tell him that his partner could not meet Palmer at the gas station either. Summers told Palmer that, if he wanted to make the buy, he would have to meet up with the partner at a Montgomery apartment complex.

Palmer drove to the apartment complex. He got lost multiple times along the way. Each time he got lost, he called Summers, who repeatedly gave him detailed directions. Summers also told Palmer that when he arrived at the apartment complex, he would be greeted out front by a "dude" who was wearing a hat but no shirt. When Palmer finally arrived at the apartment complex, he saw an unidentified man matching this description. The man flagged him down and invited him inside the same apartment that Summers had told Palmer to go to.

Once inside, Palmer gave the money to a second unidentified man. A third unidentified man then gave Palmer a package of crack cocaine. Palmer and the third man had a short conversation about the quantity of drugs Palmer had agreed to buy and whether the man had given Palmer the correct amount of crack cocaine. In this conversation, the third man mentioned that Palmer had made the agreement with a person

who was not at the apartment at that time.  To mollify Palmer's concern that he had not received the correct amount of crack cocaine in exchange for $2,250, the man gave Palmer a cooking implement with a small amount of cooked crack cocaine inside of it.

Palmer left the apartment and met up with the officers, who took possession of the drugs.  All told, the men in the apartment sold fifty-four ounces of crack cocaine to Palmer.  The devices concealed on Palmer captured audio and video recordings of Palmer's drive to the gas station and the apartment complex, the series of phone calls between Summers and Palmer during that time period, and the drug buy inside the apartment.  The government played these recordings to the jury at trial.  In addition, the government offered into evidence Summers's cell-phone records, which showed that Summers called Palmer several times before the drug buy took place.

## II.  RULE 29 MOTION

Summers challenges the sufficiency of the evidence to sustain his conviction under Federal Rule of Criminal Procedure 29.  "In considering a motion for the entry of a judgment of acquittal, a district court must view the evidence in the light most favorable to the government, and determine whether a reasonable jury could have found the defendant guilty beyond a reasonable doubt."  *United States v. Miranda*, 425 F.3d 953, 959 (11th Cir. 2005).  "The jury is free to choose between or among the conclusions to be drawn from the evidence presented at trial, and the district court must accept all reasonable inferences and credibility determinations made by the jury."  *Id.*

On the first count of the indictment, to sustain a conviction for conspiracy under 21 U.S.C. § 846, the government must prove beyond a reasonable doubt that "(1) an illegal agreement existed; (2) the defendant knew of it; and (3) the defendant, with knowledge, voluntarily joined it." *United States v. Hernandez*, 433 F.3d 1328, 1333 (11th Cir. 2005). "The existence of the conspiracy and the defendant's participation in it may be established through circumstantial evidence." *United States v. Mercer*, 165 F.3d 1331, 1333 (11th Cir. 1999).

The evidence presented at trial is sufficient to sustain Summers's conviction for conspiracy. Summers agreed to sell crack cocaine to Palmer, tried to get another person to meet Palmer when he could not make it to the gas station himself, gave Palmer detailed directions to an apartment where another person sold drugs to Palmer, arranged for another person to meet Palmer when he arrived at the apartment complex, and told another person in the apartment that Palmer had agreed to buy a certain quantity of crack cocaine for $2,250. This is enough evidence to establish that Summers was actively working with the at least one other person to sell drugs to Palmer.

On the second count of the indictment, to sustain a conviction under 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2, the government must prove beyond a reasonable doubt that "(1) the substantive offense [of knowingly distributing crack cocaine] was committed by someone; (2) the defendant committed an act which contributed to and furthered the

offense; and (3) the defendant intended to aid in its commission." *United States v. Camacho*, 233 F.3d 1308, 1317 (11th Cir. 2000).

The evidence presented at trial is sufficient to sustain Summers's conviction for distribution. The sale of drugs would not have taken place had Summers not given Palmer detailed directions to the apartment, arranged for him to be greeted at the apartment, and told a man at the apartment about the terms of the deal. These acts clearly contributed to and furthered the ultimate sale of crack cocaine, and given that Summers had already personally agreed to sell drugs to Palmer, the jury was justified in finding that Summers intended these acts to result in the sale of drugs to Palmer.

Summers makes three counter-arguments, none of which are persuasive. First, Summers argues that this Court should not rely on Palmer's testimony because Palmer was not a credible witness. It is true that Palmer's testimony is the lynchpin of the government's case; without it, the conviction cannot stand. But on a motion under Rule 29, "[c]redibility determinations are left to the jury and the jury's verdict will not be disturbed on appeal unless the testimony is 'incredible as a matter of law.'" *United States v. Flores*, 572 F.3d 1254, 1263 (11th Cir. 2009) (quoting *United States v. Calderon*, 127 F.3d 1314, 1325 (11th Cir. 1997)). "Testimony is only 'incredible' if it relates to 'facts that the witness could not have possible observed or events that could not have occurred under the laws of nature." *Id.* (quoting *Calderon*, 127 F.3d at 1314).

5

There is no evidence in this case that Palmer's testimony was impossible under this standard. In fact, his testimony was partially corroborated by the audio and video recordings, cell-phone records, and testimony of the officers and other witnesses. In addition, when Palmer took the stand, both the government and Summers impeached him for his criminal record, inconsistent testimony, and faulty memory. The jury, knowing the reasons not to trust Palmer, clearly decided that he was a credible witness. A jury has the right to believe or disbelieve any witness, and this Court will not upset this jury's decision to believe Palmer, even if Summers disagrees with it. *See id.* (quoting *United States v. Hewitt*, 663 F.2d 1381, 1385 (11th Cir. 1981)) ("[A]lthough many of the witnesses were criminals and gang members, testimony is not 'incredible' solely because it is proffered by 'an array of scoundrels, liars and brigands.' The witnesses' criminal pasts and prior inconsistent statements were made known to the jury, and the jury was entitled to weigh their testimonies accordingly.").

Second, Summers points out an inconsistency in the government's case and argues that it undermines the jury's verdict to the point where a judgment of acquittal is appropriate. Specifically, Summers notes that the officers testified that the drug buy and the events leading up to it took place between 1:00 p.m. and 1:45 p.m. But, according to Summers, the cell-phone records do not show any calls between Palmer and Summers during that time; rather, they only show the Palmer and Summers calling each other about an hour earlier. In response to this argument at trial, the government produced a still

6

photograph from the video recording of the drug buy that showed a clock on the wall of the apartment that displayed the time of 12:20 p.m., which would place the drug buy at a time consistent with the cell-phone records.  Summers argues that the photograph and the cell-phone records conflict with the officers' testimony and that this conflict is fatal to the government's case.

The Court disagrees.  "A jury is free to choose among reasonable constructions of the evidence."  *Hernandez*, 433 F.3d at 1334.  The jury could have relied upon either the still photograph and the cell-phone records or the officers' testimony regarding the time of the incident.  The decision to rely on either one would have been a reasonable construction of the evidence, and such a decision is well within the province of the jury.  Consequently, this Court will not second-guess the jury's decision to rely on the time seen in the photograph and shown in the cell-phone records.

Third, Summers argues that the Eleventh Circuit's holding in *United States v. Mercer*, 165 F.3d 1331, requires that this Court enter a judgment of acquittal in this case.  In *Mercer*, a confidential informant approached the defendant's alleged co-conspirator about buying drugs.  The co-conspirator gave the defendant's address to the informant, but refused to accompany the informant to that address or contact the defendant on behalf of the informant.  There was no evidence that the co-conspirator ever talked to the defendant about the informant or the quantity or price of the drugs that the informant wanted to buy.  The informant went to that address given to him by the co-conspirator and

bought drugs from the defendant. In a split decision, the Eleventh Circuit reversed the defendant's conviction for conspiracy because of insufficient evidence that the defendant had joined in an agreement with the co-conspirator to sell drugs.

*Mercer* is not controlling. In this case, Summers took a substantially greater role in the sale of drugs of Palmer than did the co-conspirator in *Mercer*. Summers did more than simply give Palmer an address where Palmer could buy drugs. Rather, he agreed to sell drugs and personally deliver them to Palmer at the gas station, repeatedly gave Palmer detailed directions to the apartment where Palmer ultimately bought drugs, and contacted at least one person at the apartment to let that person know that Palmer would soon show up to buy $2,250-worth of crack cocaine. The difference between the acts of Summers and the co-conspirator is stark. Thus, *Mercer* in not on point.

Therefore, none of Summers's counter-arguments are persuasive, and the Court will deny Summers's motion for a judgment of acquittal.

### III.  RULE 33 MOTION

In the alternative, Summers moves for a new trial under Federal Rule of Criminal Procedure 33, which allows a district court to "vacate any judgment and grant a new trial if the interest of justice so requires."

In evaluating a Rule 33 motion, a district court "may not reweigh the evidence and set aside the verdict simply because it feels some other result would be more reasonable." *Hernandez*, 433 F.3d at 1335. Rather, a court should only grant a new trial for

evidentiary reasons under Rule 33 if the evidence "preponderate[s] heavily against the verdict, such that it would be a miscarriage of justice to let the verdict stand." *Id.*; *see also United States v. Cox*, 995 F.2d 1041, 1044 (11th Cir. 1993) ("[New trials should not be granted on evidentiary grounds unless, at a minimum, the verdict is against the great—not merely the greater—weight of the evidence.").

Summers's reasons for seeking a new trial are the same evidentiary reasons on which he sought a judgment of acquittal—Palmer's credibility and the inconsistencies in the government's case. This Court has already found that the jury verdict was supported by the evidence and was reasonable despite these concerns. It follows that the verdict could not have been against the great weight of the evidence. Therefore, the Court will deny Summers's motion for a new trial.

## IV.  CONCLUSION

Accordingly, it is hereby

ORDERED that Summers's *Written Motion for Judgment of Acquittal or, in the Alternative, a New Trial* (Doc. # 153) is DENIED.

DONE this the 16th day of February, 2010.

/s/ Mark E. Fuller
CHIEF UNITED STATES DISTRICT JUDGE